UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CALVIN L. DIBRELL, | ) | |
|---|---|---|
| | ) | Case No. 3:24-cv-115 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| PNC BANK, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant PNC Bank's motion for summary judgment (Doc. 22) and Defendant Brock and Scott, PLLC's motion to dismiss (Doc. 17). For the following reasons, the Court will **GRANT** PNC Bank's motion (Doc. 22) and **DENY** Brock and Scott's motion (Doc. 17).

### I. BACKGROUND

On March 12, 2013, Plaintiff Calvin L. Dibrell obtained a loan from Fountain City Funding, Inc. (*See* Doc. 22-1, at 4.) This loan was secured by a deed of trust executed on the same day. (*See id.* at 22.) The deed of trust encumbered Plaintiff's real property at 5201 Holston Drive, Knoxville, Tennessee, 37914. (*See id.* at 12, 23.) Under the deed of trust, Plaintiff was to:

> pay to Lender . . . a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums in accordance with Section 10. These items are called "Escrow Items."

(*Id.* at 13.)  Additionally, Plaintiff was to "pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. . . .  Any such waiver may only be in writing."  (*Id.*)

Defendant PNC Bank ("PNC") began servicing the loan on October 1, 2019, and now holds the deed of trust.  (*See id.* at 25, 307.)  Mark Feliciano, a PNC employee, avers that after PNC began servicing the loan, Plaintiff requested that PNC eliminate property taxes from his escrow account or eliminate the escrow account entirely because he was a tax-exempt disabled veteran.  (*Id.* at 307.)  Feliciano avers that PNC informed Plaintiff that it could not eliminate the property taxes from the loan's escrow account "due to previous delinquency on property taxes."  (*Id.*)  In his complaint, Plaintiff claims that his property taxes were fully paid and up to date.  (Doc. 1, at 3.)  Plaintiff also claims that PNC never acknowledged his tax-exempt status.  (*Id.*)  Plaintiff stopped making payments on the loan in April 2023.  (*See id*. at 256, 293 (displaying Plaintiff's balance due).)  PNC began providing delinquency notices on each of Plaintiff's monthly statements in May 2023.  (*See id.* at 258.)

On June 7, 2023, PNC mailed a notice of default to Plaintiff, showing that he did not meet his mortgage obligations for April, May, and June 2023.  (*See id.* at 287.)  PNC's notice explained that if Plaintiff failed to cure his default on or before July 7, 2023, PNC could accelerate the amount due under the deed of trust.  (*See id.*)  Additionally, PNC explained that "this matter may be referred for foreclosure for whatever actions is [sic] deemed appropriate, necessary and permitted by law," and that "[s]uch action may result in sale of the Property."  (*Id.*)  Feliciano avers that Plaintiff failed to cure the default.  (*See id.* at 308.)  From October 2023 to February 2024, PNC sent Plaintiff monthly statements that provided a delinquency

notice and informed Plaintiff that the "[f]irst legal foreclosure action has been taken." (*See id.* at 268, 280.)

On February 8, 2024, Defendant Brock & Scott, PLLC ("B&S") sent a letter on behalf of PNC informing Plaintiff that he was in default on the loan. (*See id.* at 291.) B&S also informed Plaintiff that he could pay a "Reinstatement Amount" by the end of the statement month to bring his account "current." (*Id.* at 294.) PNC then appointed B&S as substitute trustee under the deed of trust and ratified all actions subsequent and prior to the substitution. (*See id.* at 299–300.) On February 19, 2024, B&S sent a notice of foreclosure to Plaintiff by mail. (*See id.* at 300.) Plaintiff filed the present action on March 12, 2024, and Feliciano avers that PNC cancelled the foreclosure proceeding scheduled for April 4, 2024. (*See id.* at 309.)

In his complaint, Plaintiff names PNC and B&S as Defendants. Plaintiff attempts to bring claims under 18 U.S.C. §§ 241, 242, and 1951. (*See* Doc. 1, at 1.) Plaintiff also alleges violations of California Civil Code § 52.1 and congressional bills H.R. 3156 and 3956. (*See id.* at 1–3.) Additionally, Plaintiff brings his claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e and 1692f. (*See id.* at 1.)

On April 19, 2024, PNC appeared in this action by filing an answer to Plaintiff's complaint. (*See* Doc. 11.) PNC filed its motion for summary judgment on January 13, 2025. (*See* Doc. 22.) B&S filed a motion to dismiss by special appearance on December 18, 2024, arguing that Plaintiff failed to serve it in accordance with Federal Rule of Civil Procedure 4(m). (*See* Doc. 17.) Plaintiff responded to B&S's motion to dismiss on January 27, 2025.[1] (*See* Doc. 25.) Under Local Rule 7.1(a), Plaintiff's deadline to respond to PNC's motion for summary

---

[1] Plaintiff's response was untimely under Local Rule 7.1(a), and he has not provided good cause for this delay. (*See* Doc. 25.) However, considering Plaintiff's pro se status, the Court will consider his response.

judgment was February 3, 2025. Plaintiff has not filed a response to PNC's motion. Accordingly, he has waived opposition to the motion, *see* E.D. Tenn. L.R. 7.2, and these motions are ripe for review.

## II. STANDARD OF LAW

### A. Service

Under Federal Rule of Civil Procedure 4(c), the procedure for service of process is as follows:

> (1) In General. A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.
> (2) By Whom. Any person who is at least 18 years old and not a party may serve a summons and complaint.
> (3) By a Marshal or Someone Specially Appointed. At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

Under Rule 4(m), a plaintiff must serve a defendant within 90 days after the complaint is filed. If a plaintiff fails to do so, a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See* Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "The plaintiff has the burden of establishing that proper service of process has occurred." *Thul v. Haaland*, No. 1:20-CV-354, 2022 WL 20728031, at *2 (E.D. Tenn. Mar. 24, 2022), *aff'd*, No. 22-5440, 2023 WL 6470733 (6th Cir. Mar. 1, 2023) (citing *Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977)). If the plaintiff fails to show good cause for his failure to timely serve a defendant, a court must then consider:

> (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other

than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Staub v. Nietzel*, No. 22-5384, 2023 WL 3059081, at *10 (6th Cir. Apr. 24, 2023) (quoting *United States v. Oakland Physicians Med. Ctr.*, 44 F.4th 565, 569 (6th Cir. 2022)).

### B. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably

5
Case 3:24-cv-00115-TRM-JEM    Document 28    Filed 02/13/25    Page 5 of 14    PageID #: 456

find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### A. Failure to Serve

On December 18, 2024, B&S filed a motion to dismiss by special appearance. (*See* Doc. 17.) B&S asserts that Plaintiff failed to serve it within the timeframe established by Rule 4(m). (*See id.*) In response, Plaintiff argues that B&S's motion to dismiss is untimely, and "part of a pattern of abusive conduct designed to delay these proceedings." (Doc. 25, at 1.) Plaintiff also claims that B&S's attorney substitutions and "procedural motions to dismiss" show a "concerted effort to obstruct justice and hinder Plaintiff's constitutional rights." (*Id.*) More specifically, Plaintiff argues that B&S has appeared and responded to his complaint,[2] "rendering the Motion to Dismiss both untimely and unnecessary." (*Id.* at 2.) Plaintiff also states that the Court "has already accepted jurisdiction, as evidenced by the setting of a trial date," and B&S "waived any objection to service by engaging in the case and by failing to raise this issue in a timely manner." (*Id.*)

The Court will deny B&S's motion to dismiss at this time. Plaintiff filed this action on March 12, 2024. (*See* Doc. 1.) Under Rule 4(m), Plaintiff had until June 10, 2024, to effectuate service upon Defendants, and Plaintiff has not provided any evidence that he served B&S by this

---

[2] Plaintiff states that "Defendants have already responded to the Complaint." (Doc. 25, at 2.) The Court presumes this identifies B&S.

date. *See Thul*, 2022 WL 20728031 at *2 ("The plaintiff has the burden of establishing that proper service of process has occurred.").[3]

Nonetheless, Plaintiff is a pro se litigant, and B&S has actual notice of this suit, as evidenced by its motion to dismiss. (*See* Doc. 17.) The Court also finds that B&S will not suffer any prejudice from an extension of the time for service "other than the inherent prejudice in having to defend the suit." *See Staub*, 2023 WL 3059081 at *10. These factors suggest that Plaintiff should be given additional time to serve B&S.[4] Additionally, nothing in the record prior to B&S's motion to dismiss provided Plaintiff with notice that he had failed to serve B&S in accordance with Rule 4. Thus, even if Plaintiff has failed to meet the requirements of Rule 4(m) by several months, the Court finds this lack of notice an equitable factor "relevant to the unique circumstances of the case." *See id*. Accordingly, the Court finds dismissal premature, and B&S's motion (Doc. 17) is **DENIED**. Plaintiff is hereby **ORDERED** to serve B&S in accordance with Rule 4 of the Federal Rules of Civil Procedure on or before **March 3, 2025**. Plaintiff's claims against B&S are subject to dismissal if he (1) fails to effectuate proper service and (2) does not provide good cause for such failure.

---

[3] In response to B&S's motion to dismiss, Plaintiff does not provide good cause for his months-long delay. (*See* Doc. 25.) B&S only appeared in this action to file a motion to dismiss for Plaintiff's failure to serve and to file a motion to stay discovery while the motion to dismiss is pending. (*See* Docs. 17, 21.) B&S has not responded to Plaintiff's complaint, and there is no indication that B&S filed its motion to dismiss in an untimely manner. Further, there is no indication on the record that B&S has substituted attorneys at any point in this case. Although B&S filed a motion to dismiss after PNC appeared and the Court set a trial date for this matter, this is not an improper attempt to delay the proceedings when B&S has not been properly served notice of Plaintiff's suit.

[4] The Court notes that B&S offered no arguments pertaining to the factors outlined in *Staub*. (*See* Docs. 17, 27.)

### B. Summary Judgment

#### i. Inapplicable Causes of Action

In Plaintiff's complaint, he attempts to assert claims against PNC pursuant to federal criminal statutes, California law, and congressional bills. The criminal statutes Plaintiff cites (18 U.S.C. §§ 241, 242, and 1951) do not provide a private cause of action. *See McBrantnie v. Rettig*, 2023 WL 10477135, at *3 n.2 (6th Cir. Aug. 14, 2023) (explaining that 18 U.S.C. §§ 241 and 242 "provide no private cause of action") (internal citation omitted); *Afshari v. Montana Black Gold*, No. 20-5362, 2020 WL 9217980, at *3 (6th Cir. Dec. 17, 2020) (holding that the plaintiff-appellant lacked "'a judicially cognizable interest' in the defendants' criminal prosecution" under 18 U.S.C. § 1951) (internal citation omitted). The California state law Plaintiff relies on (Cal. Civ. Code § 52.1) is only applicable to cases governed by California law. *See* Cal. Civ. Code § 52.1(d) (limiting the statute's jurisdiction to "the state" and superior courts within California); *Youngers v. LaSalle Corr. Transp. LLC*, No. 1:20-CV-00465-WJ-JHR, 2022 WL 991251, at *7 n.5 (D.N.M. Apr. 1, 2022) (explaining that California Civil Code § 52.1 is a California statute that only applied to the defendants' conduct in California); *Andrews v. Schnell*, No. 19-CV-0455 (PJS/SER), 2019 WL 5388478, at *1 (D. Minn. Oct. 22, 2019) (explaining that California Civil Code § 52.1 does not apply in Minnesota because it "is not part of California"); (Doc. 1, at 2 (alleging that a "substantial part" of the events giving rise to Plaintiff's claim occurred in the Eastern District of Tennessee).) Additionally, congressional bills do not provide a cause of action. *See Clinton v. City of New York*, 524 U.S. 417, 448 (1998) (explaining that a bill must be approved by both houses of the Legislature and by the President to become a law). Accordingly, any claims Plaintiff brings pursuant to criminal statutes, California state law, or

congressional bills fail as a matter of law. The Court will **GRANT** PNC summary judgment as to these claims.

### ii. FDCPA Claims

Plaintiff also brings claims under 15 U.S.C. §§ 1692e and 1692f. Section 1692e prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Under § 1692f, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692a(6) provides that:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

Falling outside this definition is:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person.

*Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (citing 15 U.S.C. § 1692a(6)(F)(ii), (iii)) (internal alteration omitted). "A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Id.* at 699 (quoting *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 794 (W.D. Ky. 2003)); *see also* 15 U.S.C. § 1692a(4) ("The term 'creditor' means any person . . . to whom a debt is owed, but such term does not include any person to the extent that

he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.") To succeed on an FDCPA claim, "a plaintiff must show that the money or property being collected qualifies as a 'debt,'" that the collecting entity is a "debt collector," and that "the debt collector violated a provision of the FDCPA." *Stamper v. Wilson & Assocs.*, P.L.L.C., No. 3:09-CV-270, 2010 WL 1408585, at *3 (E.D. Tenn. Mar. 31, 2010) (citations omitted).

In its motion for summary judgment, PNC argues that § 1692e does not apply because it "is enforcing its security interest, and, therefore, does not qualify as a 'debt collector' under the FDCPA, except for purpose of 15 U.S.C. § 1692f(6)." (Doc. 23, at 7 (cleaned up) (citing *Stamper*, 2010 WL 1408585 at *3).) Additionally, PNC argues that it did not violate § 1692f(6).

Plaintiff has not established that PNC is a "debt collector" under § 1692e. In *Montgomery v. Huntington Bank*, a bank extended a loan for a car purchase and took a security interest in the car as collateral for the loan. 346 F.3d at 695. After the car's owner "suffered an injury and was apparently unable to work," the bank sought to take possession of the car. *Id.* The bank hired a repossession agency to repossess the car, and after the agency took possession of the car, the plaintiff filed suit against the bank and the repossession agency under the FDCPA. *See id.* at 695–96.

The Sixth Circuit held that a bank using a repossession agency to repossess collateral for a loan does not qualify as a "debt collector." *Id.* at 698–99. The court found that the bank met "the exemption contained in § 1692a(6)(F)(ii)" because in using a repossession agency to repossess the collateral, the bank "was collecting or attempting to collect on a debt that was owed, due, or asserted to be owed or due, and that originated with it." *Id.* at 699. The court also

10
Case 3:24-cv-00115-TRM-JEM    Document 28    Filed 02/13/25    Page 10 of 14
PageID #: 461

found that the bank fell within the exception identified in § 1692a(6)(F)(iii) because when the bank extended the loan, it acquired a "debt" that was not "in default." *Id.*

Under *Montgomery* and the FDCPA, PNC is not a debt collector. The undisputed facts show that PNC is a creditor collecting on its account. *See id.*; § 1692a(4). PNC began servicing the loan at issue on October 1, 2019, and holds the deed of trust. (*See* Doc. 22-1, at 25, 307.) Thus, the debt is owed to PNC, meaning it is a creditor under § 1692a(4). There is no evidence showing that PNC acquired the "debt in default solely for the purpose of facilitating collection of such debt for another." *See* § 1692a(4). Because PNC acquired the loan prior to Plaintiff's default (*see* Doc. 22-1, at 287 (showing that PNC did not mail a letter of default to Plaintiff until June 7, 2023)), PNC also acquired a "debt" that was not "in default." *See* Montgomery, 346 F.3d at 699; *see also Adelson v. Ocwen Loan Servicing, LLC*, No. 20-2204, 2023 WL 1305100, at *7 (6th Cir. Jan. 31, 2023) ("Because [the defendant] did not acquire a debt in default and did not treat the debt as if it were in default until months after it acquired the debt, [the defendant] is not a debt collector within the meaning of the FDCPA." (internal quotations and alterations omitted)), *cert. denied*, 144 S. Ct. 283 (2023). Therefore, even if PNC was not clearly a creditor, the exemption in § 1692a(6)(F)(iii) applies here.

While this means that PNC is not a "debt collector" under the FDCPA, PNC only argues that § 1692e is inapplicable here. As such, the Court finds that § 1692e does not apply to PNC and it will now consider whether PNC violated any provision of § 1692f(6).

Section 1692f(6) prohibits a debt collector from:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

The Court construes Plaintiff's complaint as bringing claims under the FDCPA for PNC's (1) failure to remove the escrow account on his loan and (2) the foreclosure on his property.[5] (*See* Doc. 1, at 2–3.) Presumably, the first claim would rely on § 1692f(6)(C), and the second would rely on all three provisions of § 1692f(6). PNC argues that (1) "PNC's treatment of Plaintiff's escrow account was not wrongful," and (2) the foreclosure proceedings did not violate the FDCPA.[6] (*See* Doc. 23, at 7–9.) The Court finds that neither PNC's handling of the escrow account nor the foreclosure proceedings violated the FDCPA.

Under Tennessee law, PNC was under no obligation to remove the escrow account due to Plaintiff's tax-exempt status. Tennessee Code Annotated § 67-5-704(a)(1) provides that "[t]here shall be paid from the general funds of the state to certain disabled veterans the amount necessary to pay or reimburse such taxpayers for all or part of the local property taxes paid for a given tax year . . . ." Under Tennessee Code Annotated § 67-5-701(d)(1), "All taxpayers otherwise eligible for tax relief under . . . [§] 67-5-704, but who fail to apply for a refund or present a credit voucher for credit on their taxes within thirty-five (35) days from the date taxes in the jurisdiction become delinquent for that year, shall be deemed ineligible for such relief for that tax year." Per these statutes, Plaintiff was required to apply for a refund or voucher to exercise his tax-exempt status. Tennessee law did not require PNC to remove the escrow account. Feliciano avers that PNC used the escrow account because Plaintiff was delinquent on his property taxes, and Plaintiff provides no evidence to the contrary. (*See* Doc. 22-1, at 307.) Thus, there is no evidence suggesting that PNC "took or threatened to take any nonjudicial action

---

[5] The allegations in Plaintiff's complaint are difficult to follow, but the Court finds this to be the most reasonable interpretation of the allegations.

[6] PNC also argues that the FDCPA does not apply to the escrow account or Plaintiff's property taxes. (*See* Doc. 23, at 7–8.) The Court finds that PNC did not violate the FDCPA, so it will not address this argument.

to effect dispossession or disablement of property" that was "exempt by law from such dispossession or disablement." *See* § 1692f(6).

Additionally, PNC's foreclosure on Plaintiff's property did not violate § 1692f(6). Plaintiff defaulted on his loan payment. (*See* Doc. 22-1, at 287, 307–08.) PNC provided multiple notices to Plaintiff and offered him opportunities to cure the default. (*See id.*) Plaintiff declined to cure the default. (*See id.* at 308.) Under the terms of the loan, PNC was then entitled to accelerate the loan and to initiate foreclosure proceedings. (*See id.* at 20.) Plaintiff provides no evidence suggesting that PNC did not have a right to foreclose on the property. Thus, PNC held a present right to possession. *See* § 1692f(6)(A); *Patton v. Am. Home Mortg. Servicing, Inc.*, No. 1:11CV420-HSO-RHW, 2013 WL 1310560, at *5 (S.D. Miss. Mar. 28, 2013) ("The Trust had a present right to possession . . . because it owned the Deed of Trust and Note at the time of Plaintiff's default." (internal quotations omitted)); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, No. 1:09CV00069DAK, 2009 WL 3582294, at *4 (D. Utah Oct. 27, 2009) ("[W]hen Plaintiff defaulted on her contractual monthly payments, [the defendant] had authority under the Deed of Trust to initiate foreclosure proceedings . . . ."); *Pistole v. Mortg. Elec. Registration Sys., Inc.*, No. 07-12228, 2008 WL 2566366, at *5 (E.D. Mich. June 24, 2008) ("[T]here was a present right to possession of the property because the security interest (i.e., the mortgage) was in default."). PNC also held a present intention to take possession of the property (*see* Doc. 22-1, at 309), and Plaintiff offers no evidence to the contrary. Finally, there is no evidence showing that the property was exempt from dispossession or disablement, meaning PNC did not violate any provision of § 1692f(6). Accordingly, PNC is entitled to summary judgment on Plaintiff's FDCPA claims.

13
Case 3:24-cv-00115-TRM-JEM    Document 28    Filed 02/13/25    Page 13 of 14
PageID #: 464

### IV. CONCLUSION

For the foregoing reasons, PNC's motion for summary judgment (Doc. 22) is **GRANTED**. Plaintiff's claims against PNC are **DISMISSED WITH PREJUDICE**.

B&S's motion to dismiss (Doc. 17) is **DENIED**. Plaintiff **SHALL** serve B&S in accordance with Rule 4 of the Federal Rules of Civil Procedure on or before **March 3, 2025**. Plaintiff is hereby **ON NOTICE** that his claims against B&S are subject to dismissal if he (1) fails to effectuate proper service and (2) does not provide good cause for such failure.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**